UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WCC REALTY LLC, *et al.*,<br><br>                    Plaintiffs,<br><br>           v.<br><br>MCCALLEN AND SONS INC.,<br><br>                    Defendant. | CASE NO. 2:22-cv-00234-RSM-JRC<br><br>REPORT AND RECOMMENDATION<br><br>NOTED FOR: May 27, 2022 |

Plaintiffs, purchasers of a nursing facility, bring suit against defendant, the state court-appointed receiver from whom they purchased the facility, for fraudulent inducement and breach of two agreements accomplishing the transaction, an Asset Purchase Agreement ("APA") and an Operations Transfer Agreement ("OTA"). Defendant argues that this Court lacks subject matter jurisdiction over the controversy. The Court agrees. This is based on the longstanding rule that a plaintiff must obtain the permission of the court that appointed a receiver before suing the receiver in federal court. The District Court should therefore dismiss this matter without prejudice. If the District Court agrees, it should also impose sanctions under Fed. R. Civ. P.

11(b)(2) against plaintiffs and their counsel because the *Barton*[1] doctrine, which prohibits the filing of such an action in federal court is longstanding and clearly applies here, and plaintiffs' complaint was frivolously filed.

## BACKGROUND[2]

### I. The 2019 Agreements and 2021 Indemnification Claim

The King County Superior Court appointed defendant as receiver in June 2019. Dkt. 11, at 6; *see also Biggs v. Terhune*, 334 F.3d 910, 916 n. 3 (9th Cir. 2003) (noting that materials from proceedings in front of other tribunals are matters subject to judicial notice), *rev'd on other grounds*, *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010); *M/V Am. Queen v. S.D. Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) (judicial notice of proceedings in another cause is appropriate but the court should not take judicial notice of disputed facts in those proceedings).

In November 2019, plaintiff WCC Realty, LLC, and defendant entered into the APA (Dkt. 1-1) and plaintiff WCC Operator, LLC, and defendant entered into the OTA (Dkt. 1-4). Dkt. 1, at 5. The APA accomplished the transfer of assets, including the nursing facility's property, to plaintiffs for a purchase price of $10.5 million. Dkt. 1, at 5–6; *see also* Dkt. 1, at 6 (alleging that plaintiffs have paid this purchase price). The OTA accomplished the transfer of the nursing facility's business operations to plaintiffs. Dkt. 1, at 6. Both the APA and OTA had closing dates of April 1, 2020. Dkt. 1, at 5–6.

The APA included a provision for plaintiffs to deliver a promissory note to defendant at

---

[1] *Barton v. Barbour*, 104 U.S. 126, 127 (1881).

[2] Except as noted, the Court relies on the allegations of the complaint as providing the background facts relevant to this litigation. The Court also takes judicial notice of certain matters filed in state court, as discussed herein.

REPORT AND RECOMMENDATION - 2

closing. *See* Dkt. 1-1, at 4–5; *see also* Dkt. 1-4, at 6, 21 (references to the promissory note in the OTA). This promissory note represented accounts receivable to the nursing facility, which amounts were credited to plaintiffs against the purchase price, and which note was due one year after closing, subject to a deferral related to indemnification provisions. *See* Dkt. 1-1, at 5–6. As relevant here, these indemnification provisions (which were contained in both agreements) obliged defendant to indemnify plaintiffs for losses that occurred as a result of operations occurring before closing. *See* Dkt. 1-1, at 16; Dkt. 1-4, at 22. Defendant's obligation to indemnify plaintiffs was limited to "an offset against the Amount of the AR Note," funds of the receivership estate, or funds from any insurance policy. *See* Dkt. 1-1, at 16; Dkt. 1-4, at 23.

Indeed, the APA's terms regarding the promissory note explicitly allowed plaintiffs to offset the amounts they owed under the promissory note against any of defendant's indemnification amounts owed to plaintiffs. Dkt. 1-1, at 6. The APA also stated, "[i]n the event that any Indemnification Obligations remain in dispute as of the Maturity Date" of the note, the promissory note's amounts due were deferred and were payable "upon resolution of the disputed Indemnification Obligations. . . ." Dkt. 1-1, at 6.

The day before closing, plaintiffs learned that a nursing facility resident had contracted COVID-19. Dkt. 1, at 7. Plaintiffs claim that they intended to abandon the transactions but that defendant wrote a letter promising to indemnify plaintiffs for COVID-19-related losses that occurred as a result of COVID-19 entering the facility before closing. *See* Dkt. 1, at 7–8; *see also* Dkt. 1-6 (the letter, dated March 31, 2020). Plaintiffs agreed to close the transactions on these terms. Dkt. 1, at 8.

According to defendant's attorney's declaration, a year later, on March 31, 2021, defendant served a demand for payment of the promissory note of approximately $750,000. Dkt.

11, at 1; *see also* Dkt. 11, at 23.  That same day, plaintiffs allege that they sent a demand letter to defendant seeking approximately $1.5 million as indemnification for COVID-19-related losses and other pre-closing liabilities for which plaintiffs asserted defendant had agreed to indemnify them.  Dkt. 1, at 8; *see also* Dkt. 1-7 (demand letter).  The demand letter states that plaintiffs seek offset of this amount from the promissory note.  Dkt. 1-7, at 2.  Plaintiffs allege that defendant never indemnified them for this amount, despite having agreed to do so.  Dkt. 1, at 9.

## II. State Court Litigation

On May 5, 2021, defendant filed suit in King County Superior Court under cause number 21-2-05969-1, bringing the case as an adjunct case to the receivership.  *See* Dkt. 11, at 21; *see also Biggs*, 334 F.3d at 916 n. 3, *M/V Am. Queen*, 708 F.2d at 1491.  In the state court complaint, defendant alleged that plaintiffs had breached the promissory note, having failed to pay "the full amount due and owing under the Note," and that any indemnification amounts owed under the Note "do not fully offset the amounts due under the Note."  Dkt. 11, at 27.  Defendant also sought declaratory relief, alleging a "justiciable controversy" where plaintiffs "contend that they are entitled to an $1,448,888.46 offset against the Note for purported Indemnification Obligations."  Dkt. 11, at 28.  Defendant asserted that it "contests the fact that [plaintiffs] are entitled to an offset for purported losses related to COVID-19. . . ."  Dkt. 11, at 28.

Plaintiff WCC Realty answered the complaint on June 24, 2021, and brought no counterclaims.  Dkt. 11, at 38.  However, plaintiff WCC Realty asserted that it was "entitled to offset any payment due under the Note by $1,448,888.46, which is due and owing to WCC pursuant to" the indemnification provisions of the agreements.  Dkt. 11, at 35.

According to defendant's attorney's declaration, the parties unsuccessfully engaged in mediation on February 16, 2022.  Dkt. 11, at 2.  On February 28, 2022, plaintiff WCC Realty,

LLC, filed a motion to dismiss or stay the state court case. Dkt. 21, at 4. That motion asserts that defendant's claims are not ripe for resolution until *this* Court has resolved the issue of whether defendant must indemnify plaintiffs for COVID-19 related losses, claiming that the promissory note was not payable until dispute of the indemnification issue. *See* Dkt. 21, at 8. The state court denied the motion on April 29, 2022. Dkt. 30, at 4–5.

### III. Federal Litigation

On February 28, 2022, the same day plaintiff WCC Realty, LLC, requested dismissal or stay of the state case, plaintiffs brought suit in this Court. Dkt. 1. They allege that this Court has diversity jurisdiction, and they bring claims of fraudulent inducement to close on the APA and OTA transactions and breach of the APA and OTA's indemnification clauses. *See generally* Dkt. 1. They seek damages and rescission of the APA and OTA. Dkt. 1, at 15.

Defendant has filed the motion to dismiss for lack of subject matter jurisdiction (Dkt. 9) and for sanctions (Dkt. 22), both of which are ripe for review.

### MOTION TO DISMISS UNDER RULE 12(B)(1)

### I. Legal Standard

A defendant may seek dismissal of a lawsuit in federal court for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). As the party seeking to invoke federal jurisdiction, a plaintiff bears the burden of establishing that jurisdiction exists, and the Court "must" dismiss the action if it lacks subject matter jurisdiction. *See Ashoff v. City of Ukiah*, 130 F.3d 409, 410 (9th Cir. 1997); Fed. R. Civ. P. 12(h)(3); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004) (the court is obligated to sua sponte consider whether it has subject matter jurisdiction).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v.*

*Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Here, defendant's motion to dismiss relies on declarations, so that they have brought a factual attack on jurisdiction.

The Court need not presume the truthfulness of plaintiffs' allegations when ruling on a factual attack to jurisdiction. *See Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987) (explaining that where a factual attack on jurisdiction can be resolved without reaching the merits of the case, the Court may make factual findings regarding subject matter jurisdiction). *But see id.* (explaining that if the factual attack would resolve factual issues going to the merits, a Court may not decide such disputed facts). Here, the Court need not make any factual findings because even taking plaintiffs' allegations as true and resolving any disputed facts in plaintiffs' favor, the Court lacks subject matter jurisdiction.

**II. Dismissal under the *Barton* Doctrine**

Defendant argues that this Court lacks subject matter jurisdiction over the claims brought against it because it is a receiver and because the state court that appointed the receiver did not authorize the lawsuit. For the reasons discussed below, the Court agrees.

**A. Legal Standard**

It has long been the rule in federal court that "before suit is brought against a receiver leave of the court by which [the receiver] was appointed must be obtained." *Barton v. Barbour*, 104 U.S. 126, 127 (1881). This rule applies to receivers appointed by state courts, just as it applies to receivers appointed by federal courts. *See Barton*, 104 U.S. at 126–27 (concerning a receiver appointed by a state court being sued in federal court). A purpose of the rule is to avoid encouraging creditors of a receivership to gain an advantage over less litigious creditors by

bringing suit in a separate forum. *See id.* at 128–29.

### B. Permission to Sue

In response to defendant's argument citing *Barton*, plaintiffs claim that they obtained leave of the state court that appointed the receiver to file this suit because the APA and OTA included provisions allowing suit in federal court. Dkt. 16, at 13. They assert that when the state court approved those provisions, it gave them permission to file this lawsuit, in federal court. Dkt. 16, at 13.

Plaintiffs refer to the following APA and OTA language:

> Jurisdiction and Venue. Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement may be brought against any of the Parties *in any court located in King County, Washington*, and each of the Parties consents to the jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue laid therein. . . .

Dkt. 1-1, at 20 (APA) (emphasis added); *see also Simonoff v. Expedia, Inc.*, No. C09-1517RSL, 2010 WL 415249, at *1 (W.D. Wash. Jan. 28, 2010) (ruling that a forum selection clause referring to "courts in King County, Washington" referred to state or federal court), *aff'd,* 643 F.3d 1202 (9th Cir. 2011).

> Jurisdiction. Each Party hereto consents to the jurisdiction of the courts of the State of Washington, or *if it can acquire jurisdiction, in the Federal District Courts located in Seattle, Washington* as to claims arising under or brought in connection with this Agreement and the transactions contemplated herein.

Dkt. 1-4, at 25 (OTA) (emphasis added).

Plaintiffs' authority for their argument is a non-binding ruling from the Northern District of Illinois in *Newman v. Crane, Heyman, Simon, Welch & Clar*. *See* 590 B.R. 457 (2018). In that case, the liquidating trustee of a trust that had gone bankrupt sued the law firm formerly

representing the trust for malpractice. *Id.* at 460. Over the law firm's objections, the District Court concluded that the bankruptcy court had, in fact, granted permission to bring the suit. *Id.* at 462–63. In *Newman*, the bankruptcy court had authorized suit in federal court because it approved a plan that "explicitly gave the Trustee the authority to sue [the law firm] for malpractice"; the plan stated that the trustee had the right to do so "without any further order of the Bankruptcy Court[.]" *Id.* Indeed, in that case the plan approved by the bankruptcy court specifically mentioned the matter related to which the trustee alleged that the law firm had committed malpractice. *Id.* at 462.

The cited language in the OTA and APA is not similar: neither provision contains the key language in *Newman* authorizing a lawsuit without further permission of the receivership court. If anything, the language of the OTA indicates that the parties agreed that they could bring suit in the District Court only if the District Court "acquire[d] jurisdiction"—for instance, if the receivership court otherwise authorized the lawsuit. *See also In re Sedgwick*, 560 B.R. 786, 796 (C.D. Cal. 2016) ("Whether or not to grant leave under *Barton* to bring suit in another forum is at the discretion of the court. Appellant has provided no authority to support his contention that parties can enter into an agreement to waive the requirement of *Barton* approval, and effectively circumvent this power from the court."); *Newman*, 590 B.R. at 462 ("[C]ourts have stressed that parties cannot contract to suit—the appointing court *must approve suits* to avoid the *Baron* doctrine." (Emphasis added.)). In addition, defendant makes a compelling argument that the policy concerns animating *Barton* (which did not apply in *Newman*, a case between court-appointed parties to the bankruptcy proceeding) apply here in a manner distinguishing this case from *Newman*. *See* Dkt. 20, at 5 n.3 ("Plaintiffs' claims would allow

them to place themselves in a better position than other creditors.").

Plaintiffs appear to argue in a footnote that the Court should apply Washington law about the *Barton* doctrine (which plaintiffs claim holds that failure to obtain a receivership court's permission to bring suit is a waivable defect), but the Court is not convinced. It is well-established that in diversity cases, the Court applies state *substantive* law and federal *procedural* law—and whether or not noncompliance with *Barton* is a waivable defect is a procedural issue. *See generally Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). Also, it would make little sense to allow Washington State law to determine the scope of federal jurisdiction in a district court. *E.g.*, *Williams v. Murdoch*, 350 F.2d 840, 842 (3d Cir. 1965) ("[T]he question of whether the United States district court has jurisdiction in the first instance turns solely upon federal law which is not dependent on state law and which cannot be altered by it.").

Because plaintiffs fail to show that they had the receivership court's permission to bring suit, the Court turns to the remainder of their arguments related to *Barton*.

### C.  28 U.S.C. § 959(a)

Plaintiffs argue that a statutory exception from *Barton* applies. Dkt. 16, at 10. The statute in question is 28 U.S.C. § 959(a), which allows suit against receivers without leave of the appointing court if the lawsuit is "with respect to any of their acts or transactions in carrying on business connected with such property."

Applying this statute, the Ninth Circuit has distinguished between situations in which "the . . . [receiver] is actually operating the business" and challenging "acts or transactions in conducting the . . . business in the ordinary sense of the words or in pursuing that business as an operating enterprise" (to which § 959(a) applies) and "actions taken in winding up an enterprise. . . ." *Med. Dev. Int'l v. Cal. Dep't of Corr. & Rehab.*, 585 F.3d 1211, 1217 (9th Cir.

2009) (internal citations and quotation marks omitted); *see also Cox v. Mariposa Cnty.*, No. 19-CV-01105-AWI-BAM, 2020 WL 1689706, at *9 (E.D. Cal. Apr. 7, 2020) ("The 'carry on business' exception to the *Barton* doctrine in 28 U.S.C. § 959(a) is intended to permit actions—typically by third parties—redressing torts committed in furtherance of a business under the control of a receiver, bankruptcy trustee or other such court-appointed officer.").

The complaint in this Court revolves around the receiver's conduct in winding up the nursing facility's operations and is accordingly not within the exception in 28 U.S.C. § 959(a). Plaintiffs allege that defendant "fraudulently induced Plaintiffs to close on those transactions, despite Defendant's knowledge that the Facility had at least one known patient who was COVID-19 positive at the time those transactions closed, and with Defendant knowing it had no intention of indemnifying Plaintiffs for losses at the Facility occasioned by COVID-19 and covered by the transactions governing contracts." Dkt. 1, at 2. And plaintiffs allege that defendant breached the agreements' indemnification provisions. Dkt. 1, at 2. Although, of course, background facts about the receiver's operation of the nursing facility before closing are certainly relevant to this matter, the crux of the matter is defendant's actions when allegedly convincing plaintiffs to close on the sale and responding to the indemnification claim in 2021. The challenged actions do not constitute the operations of a nursing facility but are related to defendant's role in selling the nursing facility as a receiver.

Although there is some question whether 28 U.S.C. § 959(a) applies to state court receivers (*see, e.g.*, *Freeman v. Cnty. of Orange*, No. SACV14107JLSANX, 2014 WL 12668679, at *4 (C.D. Cal. May 29, 2014) ("[T]he 'appointing' court in § 959(a) . . . must be a federal court."), the Court need not reach this issue. Even if 28 U.S.C. § 959(a) applies to

actions against state court receivers, this case does not fall under 28 U.S.C. § 959(a).

### D. *Ultra Vires*

Plaintiffs next claim that the receiver was acting *ultra vires*, so that they may bring suit in this forum. Dkt. 16, at 12.

*Barton* does not bar suits against a receiver for acts "*ultra vires*"—that is, in excess of the receiver's authority or outside the receiver's official capacity. *See Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967). For instance, in *Leonard*, a receiver-trustee could be sued notwithstanding the *Barton* doctrine for breaking into, seizing, and refusing to relinquish real property that was not listed as an asset of a bankruptcy estate. *Id.*

"The *ultra vires* exception . . . is a 'narrowly defined concept that applies only to actions which are completely outside the scope of a [receiver's] duties and responsibilities.'" *Cox*, 2020 WL 1689706, at *6 (internal citations omitted). But here, the order of appointment authorized defendant to "have exclusive possession and control over the Debtor and its assets, with the power and authority to preserve, protect, and *liquidate* those assets" and to "sell property of the estate" after obtaining court approval of the sale. Dkt. 11, at 11–12 (emphasis added). The defendant's actions taken in the course of liquidating the estate by selling the facility and its assets, even if wrongful, are clearly part of defendant's official duties as receiver. Moreover, to the extent that plaintiffs challenge defendant's failure to indemnify them, the order of appointment also empowered defendant to "assert rights, claims, or causes of action of the Receiver arising out of transactions to which the Receiver is participant"—such as asserting that plaintiffs were not entitled to set off amounts related to COVID-19 expenses from the promissory note. *See* Dkt. 11, at 12.

Noting that most cases involving *ultra vires* actions arise when a receiver improperly

REPORT AND RECOMMENDATION - 11

takes and refuses to return a third party's property, plaintiffs argue that defendant has improperly withheld their money. *See* Dkt. 16, at 12. The Court accordingly interprets plaintiffs' argument as asserting that they have paid the purchase price and that they are entitled to a return of portions of that purchase price. There are two major flaws with this argument, however. First, although plaintiffs rely on cases about the wrongful seizure of property, here, the allegations of plaintiffs' complaint are that defendant was initially entitled to the purchase price but then later refused to return portions of it. This is not the same as a situation in which a receiver mistakenly takes possession of the wrong property. Second, to interpret any case in which a receiver and a party who contracted with the receiver dispute whether the receiver breached the contract or the party is entitled to damages would allow the *ultra vires* exception to swallow the rule. If this were the case, actions such as plaintiffs' for breach of contract and fraud brought against a receiver would not be subject to dismissal under *Barton*. *But see, e.g.*, *In re Cutright*, No. 08-70160-SCS, 2012 WL 1945703, at *1 (Bankr. E.D. Va. May 30, 2012) (explaining that under *Barton*, a purchaser could not bring suit for damages for breach of contract against a bankruptcy trustee). However, the *ultra vires* exception "is a narrowly defined concept that applies only to actions which are completely outside the scope of the [receiver's] duties and responsibilities." *Kirschner v. Blixseth*, No. CV1108283GAFSPX, 2012 WL 12885076, at *9 (C.D. Cal. Nov. 1, 2012), *rev'd on other grounds sub nom. Glasser v. Blixseth*, 649 F. App'x 506 (9th Cir. 2016). This matter, in contrast, involves actions within the scope of the receiver's duties and responsibilities.

### E. Improper Limitation on Congressional Power to Set Jurisdiction

Finally, defendant argues that federal common law cannot constrict the Court's subject matter jurisdiction and generally raises policy arguments against the application of *Barton* here.

1  *See* Dkt. 16, at 15.  But having found that this case clearly falls within the *Barton* doctrine, this

2  Court is not at liberty to ignore Supreme Court precedent.  The Court declines to address this

3  argument further.

4        Because the Court lacks subject matter jurisdiction under *Barton*, the Court need not

5  address the remainder of the arguments in the motion to dismiss.  The Court turns to the issue of

6  whether sanctions should be imposed.

7  <center>**MOTION FOR SANCTIONS**</center>

8        Defendant argues that Fed. R. Civ. P. 11 sanctions are appropriate because this matter is

9  frivolous.  Dkt. 22, at 8; *see also* Dkt. 22, at 7 (asserting that defendant complied with the

10 requirement of giving plaintiffs 21 days to withdraw the complaint before filing the sanctions

11 motion); Fed. R. Civ. P. 11(c)(2) (requiring such notice).  The undersigned agrees:  if the District

12 Court agrees to dismiss this case under *Barton*, the Court should also award sanctions against

13 plaintiffs and their attorneys.

14       Plaintiffs untimely filed their response to the sanctions motion (*see* Dkts. 27, 31), but the

15 Court will exercise its discretion to address the merits of plaintiffs' arguments, as necessary

16 herein.  Plaintiffs themselves also request costs, but for the reasons discussed below, the Court

17 finds this request to be meritless and recommends denying it.  *See* Dkt. 27, at 13.

18       When filing this lawsuit in federal court, plaintiffs certified to the best of their knowledge

19 that "after an inquiry reasonable under the circumstances," the claims were "warranted by

20 existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law

21 or for establishing new law[.]"  Fed. R. Civ. P. 11(b)(2).  "If, after notice and a reasonable

22 opportunity to respond, the court determines that Rule 11(b) has been violated, the court may

23 impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is

24

responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Where, as here, the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal citation omitted).

This complaint is legally baseless under clear and longstanding federal law. *Accord Wavetronix, LLC v. Myers for DBSI Liquidating Tr.*, 704 F. App'x 696, 698 (9th Cir. 2017) (affirming the award of sanctions where a district court "could properly determine that" filing a complaint in federal court without a bankruptcy court's permission was not objectively reasonable, was legally baseless, and was not supported by an objectively good faith argument following a reasonable inquiry); *Spice v. Internal Revenue Serv.*, No. 20-5005 RJB, 2020 WL 2838609, at *5 (W.D. Wash. June 1, 2020) (affirming award of sanctions when *Barton* doctrine applied). Plaintiffs reiterate their arguments that 28 U.S.C. § 959(a) applies, that the receiver acted *ultra vires*, that they have the receivership court's authorization, and that policy considerations should keep the Court from applying *Barton*, but these arguments clearly fail, as set forth above. *Accord Wavetronix*, 704 F. App'x at 698 (noting that although litigant cited authority that *Barton* does not apply if a trustee is operating a business, the complaint clearly brought claims of liquidation, not operation, so that sanctions were appropriate). The complaint alleges claims related to liquidating (not running) the facility, the argument that the receiver was acting *ultra vires* is strained, and the forum selection clauses in the agreements at issue are not the same as authorization from a receiver to bring this suit. Moreover, the policy arguments that plaintiffs advance are unpersuasive reasons to abandon controlling Supreme Court precedent that

clearly applies here.

In addition, a reasonable inquiry would have counseled against filing the complaint in this matter. *See Wavetronix*, 704 F. App'x at 698 (even where attorney researched the complaint before filing, the District Court had discretion to award sanctions where the complaint was filed in violation of the *Barton* doctrine). The frivolousness of this matter justifies imposition of sanctions under Rule 11(b)(2).

The Court need not reach whether plaintiffs' conduct also amounts to presenting this lawsuit for improper purposes such as harassment, unnecessary delay, or needlessly increasing the cost of litigation. *See* Fed. R. Civ. P. 11(b)(1); *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). However, the Court does note that plaintiffs' attempts to have the state court case stayed while this case is litigated certainly support defendant's claims that this litigation is meant to exhaust the receivership funds and delay the state court litigation. *See* Dkt. 28, at 4. Notably, the motion to stay asserts that setoff rights in the promissory note must be resolved (in this Court) (Dkt. 28, at 25), even though the state court action also raises the issue of setoff rights in the promissory note as necessary to adjudication of those claims. *See* Dkt. 11, at 27–28; Dkt. 11, at 35.

The Court accordingly recommends denying plaintiffs' request for fees and costs in opposing the motion for sanctions (Dkt. 27, at 13) and granting defendant's request for sanctions, based on the frivolousness of the complaint in this matter and under Rule 11(b)(2). The Court finds that although the 1993 advisory committee notes to Rule 11 generally recommend payment of the sanction to the Court, it is appropriate in this case that plaintiffs pay the sanction to the receiver to compensate the receivership for the cost of defending against untenable claims and as the fiduciary for receivership creditors. *Accord Wavetronix LLC v. Swenson*, No. 4:12-CV-

REPORT AND RECOMMENDATION - 15

00244-BLW, 2013 WL 1868019, at *2 (D. Idaho May 1, 2013), *aff'd* 704 F. App'x 696 (9th Cir. 2017). The sanction is under Rule 11(b)(1) and is imposed jointly on plaintiffs, plaintiffs' counsel, and their law firm. *See* Fed. R. Civ. P. 11(c)(1).

## CONCLUSION

For the reasons set forth above, the Court recommends that defendant's motion to dismiss be granted (Dkt. 9) and that the case be dismissed without prejudice for lack of subject matter jurisdiction. The District Court should award sanctions, specifically defendant's reasonable attorney fees and costs in defending this action, under Fed. R. Civ. P. 11(b)(2) to the receiver and to be paid by plaintiffs and plaintiffs' counsel, with their law firm jointly responsible. The District Court should direct defendant to file a petition detailing its reasonable attorney fees and costs in defending this action and should set a briefing schedule on the matter.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **May 27, 2022,** as noted in the caption.

Dated this 11th day of May, 2022.

J. Richard Creatura
Chief United States Magistrate Judge